# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEIGHBORHOOD HOUSE ASSOCIATION,<br><br>　　　　　　　Plaintiff,<br><br>　vs.<br><br>CHILDREN OF THE RAINBOW HEAD START, LLC; CHILDREN OF THE RAINBOW, INC.; and GAIL WALKER,<br><br>　　　　　　　Defendants. | CASE NO. 11cv1965 JM(POR)<br><br>ORDER GRANTING TEMPORARY RESTRAINING ORDER; SCHEDULING ORDER ON PRELIMINARY INJUNCTION |

Plaintiff Neighborhood House Association Inc. ("NHA") moves for a temporary restraining order ("TRO") to compel Defendants Children of the Rainbow Headstart, LLC ("COTRHS"), Children of the Rainbow, Inc. ("COTR") and Gail Walker (collectively "Defendants") to return certain property, as more fully identified herein. Having carefully considered the papers of the parties, the court record, appropriate legal authorities, and arguments of counsel, the court grants the TRO and orders that Defendants immediately provide or make available to NHA, all the children's files within its possession or control and all property purchased, procured, or developed by or through federal Head Start, including property located at the Urban Village I, Logan, Sherman Heights, and Joan Kroc Center program sites as identified in the Kemp Declaration.

## BACKGROUND

On August 25, 2011 NHA commenced this action against Defendants alleging three claims for declaratory judgment, injunctive relief, and recovery and accounting. NHA, a non-profit public

benefit corporation, is the San Diego County "grantee agency" for purposes of the Head Start Act, 42 U.S.C. §9831 et seq. Health and Human Services ("HHS") designated NHA as San Diego's grantee agency in the 1970s. Grantee agencies may subcontract with other child-serving agencies to provide services to Head Start children. Between January 2007 and June 2011 COTRHS and COTR, both for-profit entities, were subcontractors to NHA.

When NHA turned over management of nine childcare facilities to Defendants, it supplied all equipment and property to operate the Head Start facilities. (Kemp Decl. ¶2). NHA provided COTRHS "with possession of the physical premises upon which classroom facilities were located through subleases, playground equipment, and all necessary classroom contents (chairs, computers, books, supplies, etc.), valued in excess of $600,000. (Kemp Decl. ¶3, 8; Carson Decl. ¶9). COTRHS also possesses confidential files for the children enrolled in the Head Start Programs.[1]

In broad brush, NHA argues that the agreements between the parties, as well as 45 C.F.R. §74.33, provide that NHA owns title to all property purchased or developed with federal Head Start funds. (Johnson Decl. ¶¶3-8). NHA now seeks the return of all so-called children's files and property purchased with Head Start funds, including the property identified in the Kemp Declaration.

**DISCUSSION**

**Legal Standards**

To obtain preliminary or temporary injunctive relief, the party must meet one of two tests: (1) a combination of probable success and the possibility of irreparable harm, or (2) the party raises serious questions and the balance of hardship tips in its favor. Arcamuzi v. Continental Air Lines, Inc., 819 F.2d 935, 937 (9th Cir. 1987). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." Id. Under both formulations, however, the party must demonstrate a "fair chance of success on the merits" and a "significant threat of irreparable injury." Id; Miller v. California Pac. Med. Ctr., 19 F.3d 449, 456 (9th Cir. 1994 (en banc).

///

---

[1] The contents of each file for a child enrolled in NHA's Head Start program are confidential and contain private information regarding each child and family. (Carson Decl. ¶43).

**The TRO Motion**

<u>Success on the Merits</u>

The agreements between NHA and Defendants provide that NHA owns title to all property purchased or developed with federal Head Start funds. (Johnson decl. ¶3-8; Exh. A-F). Among other things, the agreements provide that property acquired by Defendants is held subject to a federal interest in accordance with the term of the federal grant and Head Start Act and that such property "may not be used for any purpose inconsistent with that authorized by the Head Start Act and applicable regulations." (Johnson Decl. Exh. E-F, 2010 Service Agreement §5.10). Not only do the agreements provide that Defendants may not encumber, transfer, or sell property without the consent of HHS, but that upon termination of the Agreement, "COTR shall surrender possession of any property or premises belonging to NHA that is in COTR's possession or control. . . . In addition . . . , COTR agrees to return to NHA within 30 days afer the termination of the Agreement, all equipment and supplies purchased with Federal Head Start funds and all records pertaining to this program, including but not limited to the following documents. . . ." (Johnson Decl. E, 2010 Service Agreement §9.4).

NHA also cites the Code of Federal Regulations for the proposition that "title of federally owned property remains vested in the Federal Government." 45 C.F.R. §74.33. Courts have broadly interpreted this provision. For example, in <u>Henry v. First National Bank of Clarksdale</u>, 595 F.2d 291, 309 (5th Cir. 1979) a debtor attempted to collect its judgment against a Head Start grantee agency. Noting that virtually all of the debtor's assets were derived from grants made through the Department of Health, Education and Welfare under the Head Start Act, the Seventh Circuit noted:

> The Head Start Act carefully delineates the purposes for which grant funds may be expended. Although the debtor was a private, nonprofit corporation and not a federal agency, extensive and detailed regulations govern its expenditure of federal funds in order to ensure the use of grant funds for approved purposes. <u>See</u> 45 C.F.R. part 74 (1977). The United States retains a reversionary interest in all grant funds in all property purchased with such funds that can no long be used for the narrow purposes specified in the act and regulations."

<u>Id.</u>

Here, NHA makes a strong showing of the likelihood of success on the merits based upon the

Service Agreements between the parties and the Head Start Act. Moreover, at the time of oral argument counsel for Defendants acknowledged that NHA possessed the legal right to the confidential children files and all property purchased with federal Head Start funds.

In the opposition, COTR argues that, prior to filing the TRO, NHA never provided it with an itemized list of physical items to be returned. COTR represents that it has returned all confidential client files and that it is "willing" to turn over all property to NHA with reservation of rights to litigate the ownership of the property and to seek damages for the fair market value of the property. (Oppo. at p. 2:25-28). At the time of oral argument, counsel for Defendants acknowledged that not all children's files had been returned to NHA.

Defendants' legal argument is that title to equipment acquired by a recipient of federal funds vests in the recipient. Defendants cite 2 C.F.R. §213.34 for this proposition. However, the cited C.F.R. code section appears to be a typographical error as this code section does not appear to exist. In any event, the contractual agreements between the parties require Defendants to return to NHA all property purchased with federal Head Start funds upon termination of the Agreement. (Service Agreement ¶9.4).

Another argument by Defendants is that it believed that the contractual provision only applied to "property that NHA had previously purchased while it was controlling the Head Start facilities and loaned to COTR to use after COTR began providing management services." (Oppo. at p.3:26-4:1). This argument appears to be a strained reading of the clear contractual language: "COTR agrees to return to NHA within 30 days after the termination of this Agreement all equipment and supplies purchased with Federal Head Start funds." (Service Agreement ¶9.4).

In sum, on the current record, NHA makes a strong showing on the merits that it is entitled to possession of all children's files and the property located at the Urban Village I, Logan, Sherman Heights, and the Joan Kroc Center program sites, as identified in the Kemp Declaration, as well as any other property purchased by federal Head Start funds not included in the Kemp Declaration, or which may be located at other program sites.

Irreparable Harm

NHA represents that it will suffer irreparable harm if the children's files and property are not

delivered by the first day of school, September 19, 2011. NHA comes forward with evidence to show that it will not be able to serve the Head Start children nor comply with federal regulations and other federal record keeping requirements without the property. NHA also argues that, by terms of the federal grant, it potentially places federal funds at risk and it could be held liable for any deficiency.

Neither in their papers nor at the time of oral argument did Defendants address the significant and irreparable harm that will occur if the files and property are not returned.

In sum, the court finds that NHA and the Head Start children will suffer severe and irreparable harm if the property is not immediately returned to NHA.

Other Factors

On the present record, the public interest strongly weighs in favor of entry of the TRO. The Head Start program plays an important role in the community by providing services to disadvantaged children.

Neither in their papers nor at the time of oral argument did Defendants address the harm to the public's interest that will occur if the files and property are not returned.

In sum, considering the Arcamuzi factors and the public interest, the court concludes that NHA has strongly satisfied the requirements for the issuance of a TRO.

**Issuance of a Bond**

Pursuant to Rule 65, the court requires NHA to post a bond in the amount of $25,000. The bond shall be posted no later than by September 17, 2011. The amount of the bond appears sufficient to compensate for any costs or damages sustained by Defendants arising from the release or provision of property to NHA that is not traceable to federal Head Start funds.

**Scheduling Order**

At the time of oral argument on the TRO, the parties agreed to continue the effective date of the TRO until resolution of the anticipated preliminary injunction hearing. NHA shall file and serve its motion for a preliminary injunction by October 7, 2011, Defendants a response by October 14, 2011, and NHA an optional reply brief by October 21, 2011. Oral argument on the preliminary injunction is calendared for October 28, 2011 at 1:30 p.m.

In sum, the court grants the TRO and orders that Defendants immediately, and in no event later

1  than 4:00 p.m. on September 16, 2011, provide  or make available to NHA, all the children's files
2  within their possession or control and all property purchased by, or procured through federal Head
3  Start funds, including the property located at the Urban Village I, Logan, Sherman Heights, and Joan
4  Kroc Center program sites as identified in the Kemp Declaration.  Moreover, Defendants are ordered
5  to immediately authorize (or request) the release of any such property currently stored or under the
6  control of third parties other than those enumerated in the Kemp Declaration.
7  It is the intent of this order for Defendants to engage in all reasonable efforts to ensure such property
8  is immediately provided to NHA.

**IT IS SO ORDERED.**

DATED:  September 15, 2011

Hon. Jeffrey T. Miller
United States District Judge

cc:         All parties