# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE NEIGHBORHOOD HOUSE ASSOCIATION, a California non-profit, public benefits corporation,<br><br>        Plaintiff,<br>  vs.<br><br>CHILDREN OF THE RAINBOW HEAD START, LLC, a California limited liability company; CHILDREN OF THE RAINBOW, INC., a California corporation; and GALE WALKER, an individual,<br><br>        Defendants. | Case No.11-CV-1965-JM-POR<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Docket Nos. 26 & 27 |

      Plaintiff The Neighborhood House Association ("NHA") filed a complaint in this court on August 25, 2011 against Defendants Children of the Rainbow Head Start, LLC ("COTRHS"), Children of the Rainbow, Inc. ("COTRI"), and Gale Walker (collectively "Defendants" or "COTR"), who, pursuant to the parties' contracts, operated several Head Start facilities using funding provided by NHA. Defendants filed a complaint in state court based on a dispute arising out of the same set of contracts in June 2011(the "COTR complaint" or "COTR case"). It was removed to this court by NHA in August 2011, but shortly thereafter it was remanded to state court. Now, Defendants move to dismiss this case and NHA moves for a preliminary injunction.

Because this court lacks subject matter jurisdiction, the motion to dismiss is GRANTED and the motion for preliminary injunction is DENIED as moot.

**I.  BACKGROUND**

In 2007, NHA and Defendants entered into multiple short term agreements under which Defendants received Head Start funding and services to operate child care facilities.  Compl. ¶ 12.  Under several Service Agreements and Memoranda of Understanding, NHA agreed to provide Head Start funding and property, and COTRI agreed to use the money and property in a specific manner.  ¶ 12.  Eventually COTRHS came to manage nine Head Start facilities originally opened by NHA and were provided with funding to run Head Start programs at two COTRI facilities.  ¶¶ 13-17.

The most recent agreements between the parties expired on June 30, 2011.  ¶ 26.  Defendants filed a complaint against NHA in state court consisting of contract and tort claims, which was removed to this court in August.  In September the matter was remanded, as "[t]he federal claims appear[ed] collateral to the allegedly contractual and tortious disputes."  Case No. 3:11-CV-1786, Doc. 20 at 4.

NHA filed the instant complaint in this court on August 25, claiming that after the contracts expired Defendants failed to return property purchased with federal funds, including classroom supplies and playground equipment.  The complaint also alleges that Defendants failed to return confidential children files that NHA needs to properly run the Head Start program for the 2011-2012 school year.  The complaint requests injunctive and declaratory relief clarifying the parties' rights to classroom contents, playground equipment, and children files.

In early September, Plaintiff requested a Temporary Restraining Order ("TRO") to prevent Defendants from disposing of, selling, or using any of the assets acquired through Head Start funding.  The court issued a TRO on September 15, requiring Defendants to immediately

make all children files available to NHA and to return all property "purchased by or procured through federal Head Start funds." The TRO also required NHA to post a $25,000 bond.

NHA now moves for a preliminary injunction, claiming that Defendants have hidden and kept property belonging to NHA and that they have refused to provide a statement under oath affirming that they have complied with the TRO. Defendants move to dismiss the case, principally arguing that (a) NHA was required to file their claims as compulsory counterclaims in Defendants' case against NHA and (b) the court lacks subject matter jurisdiction.

As discussed below, Defendants' motion to dismiss is GRANTED as the court lacks subject matter jurisdiction. Consequently, Plaintiff's motion for a preliminary injunction is DENIED as moot.

## II. LEGAL STANDARD AND DISCUSSION

### A. Lack of Subject Matter Jurisdiction

While the court has already issued a TRO in this action, the case must be dismissed if at any time the court determines it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3). Because Plaintiff does not seek relief directly under a federal statute and no diversity jurisdiction is alleged, the court must determine whether Plaintiff's requests for declaratory and injunctive relief arise under federal law. Grable & Sons Metal Products, Inc. v. Darue Engineering, 545 U.S. 308, 314 (2005), provides that courts deciding this question must examine whether the "state-law claim necessarily raise[s] a federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing a congressionally approved balance of federal and state judicial responsibilities."

Defendants argue that this court lacks subject matter jurisdiction because the complaint relies "on obligations created by the Services Agreement and MOU." They maintain that even if the contracts require adherence to federal law, that requirement is not sufficient to confer subject matter jurisdiction. NHA's opposition focuses on the use of Head Start funds to purchase the

property in question.  NHA also argues that the federal reversionary interest in the property favors the exercise of federal jurisdiction.

While it is undisputed that Head Start is a federally created and governed program, NHA has failed to demonstrate that this court's decision will turn on a substantial, disputed question of federal law.  Instead, basic contract principles provide a sufficient basis to determine this dispute.  Furthermore, Defendants acknowledge their duty to return all Head Start property, and, at this stage in the litigation, the only material issue is a factual one: whether all property has been returned.

1. Existence of a Disputed and Substantial Federal Issue

In Grable, the IRS seized property in order to satisfy a tax delinquency.  Five years later, the plaintiff brought a quiet title action under state law, claiming that the IRS seizure was invalid because the IRS had failed to comply with its own notice regulations for seizure.  The Court reiterated that federal jurisdiction under a state law claim exists only when the case "turn[s] on substantial questions of federal law, and thus justifies resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." 545 U.S. at 312.  It further found that "[t]his case warrants federal jurisdiction" because "[w]hether Grable was given notice within the meaning of the federal statute is . . . an essential element of its quiet title claim, and the meaning of the federal statute is actually in dispute." Id. at 314-15.

NHA vigorously argues that federal law dominates this case because the Head Start Act limits how Defendants may use the property in question.  While that is true, it is undisputed that the contract requires Defendants to return the property to NHA.  No construction or application of the federal law is necessary to make that determination, as was the case in Grable.  See also Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold and Easement, 524 F.3d 1090, 1102 (9th Cir. 2008) (noting that case was not one in which "a court would need to resolve a disputed provision [of federal law] in order to resolve [the state law claims], because

4

no provision [of federal law] constitute[d] an essential element of those claims"). NHA also notes that the agreements prevent sale, encumbrance or transfer of property without HHS approval, but does not explain why any such involvement would require the construction or resolution of federal law, especially given the concession that the property must be returned.[1]

While it is true that the Head Start Act provides a context for assessing any harm NHA might face if deprived of its property, that statutory reference is insufficient to confer federal jurisdiction. Any potential harm is apparent and implicates no statutory or regulatory construction within the meaning of Grable.

2. Existence of a Federal Reversionary Interest

NHA also bases much of its jurisdictional argument on the reversionary interest in the property. Though the authority cited by NHA supports the claim that there is a federal reversionary interest in the property, the cases do not establish that federal subject matter jurisdiction exists automatically when there is such an interest.

NHA relies partially on Henry v. First National Bank of Clarksdale, 595 F.2d 291 (5th Cir. 1979).[2] While Henry does support the position that there is a federal interest in Head Start property, nowhere does the opinion suggest that federal subject matter jurisdiction results automatically from the reversionary interest. In discussing federal subject matter jurisdiction, the Henry court never referred to the federal property interest, but instead held that jurisdiction existed because several of the claims invoked the First and Fourteenth Amendments, as well as the Federal Civil Rights Act (42 U.S.C. §1983).

---

[1] NHA also cites Borden v. Allstate Ins. Co., 589 F.3d 168 (5th Cir. 2009), which held that an insurance coverage dispute should be heard in federal court because the policy was issued pursuant to the National Flood Insurance Program. In that case, the insurance plan at issue was codified in the Code of Federal Regulations and was issued pursuant to a federal law. Thus, construction of the policy was clearly an issue of federal law. Id. at 172-73.

[2] Henry has a complex factual background and a long procedural history that will not be detailed here. Essentially, the NAACP and several other organizations organized a boycott of certain allegedly discriminatory businesses in Mississippi. One of the organizations involved was Mississippi Action for Progress ("MAP"), the state's Head Start grantee.

1    NHA also cites Neukirchen v. Wood County Head Start, Inc., 53 F.3d 809 (7th Cir. 1995). Indeed, in referring to Head Start funds, the court noted that "[i]t is clear in this circuit that property purchased with federal grant funds constitutes federal property." Id. at 811. However, Neukirchen did nothing to establish that the federal interest in the property conferred subject matter jurisdiction. In fact, the Neukirchen court did not assess the subject matter jurisdiction issue, most likely because the original case was clearly brought under the ADEA.

In sum, NHA has failed to demonstrate that there is a disputed and substantial issue of federal law as required by Grable. Further, Henry, Neukirchen, and other cases relied on by NHA to establish that a federal reversionary interest in property automatically grants subject matter jurisdiction are unpersuasive because each of those cases had a clear separate basis for federal jurisdiction.

**B. Existence of a Compulsory Counterclaim**

Even if the court had subject matter jurisdiction to hear this case, the existence of compulsory counterclaims in this matter would persuade the court to grant the motion to dismiss. COTR argues that because NHA's claims all arise from the same contract, NHA was required to bring its claims as counterclaims in the COTR case. NHA responds that while its claims arise from the contract between the two parties, the claims are not compulsory counterclaims because they arise from separate actions taken by the parties after the contracts' expiration.

In Pochiro v. Prudential Ins. Co. of America, 827 F.2d 1246 (9th Cir. 1986) the Ninth Circuit held that a federal court should apply state law to determine if a counterclaim should have been filed in a state court action.[3] Therefore, Cal. Civ. Proc. §426.30 should determine

---

[3] NHA's opposition focuses principally on the federal rule, presumably because the COTR case was briefly before this court. It has not provided any support for that reasoning. Since that case is currently pending in state court, Pochiro applies.

whether a counterclaim is compulsory.[4]  That law states that "if a party against whom a complaint has been filed and served fails to allege in a cross-complaint any related cause of action which . . . he has against the plaintiff," the party may not thereafter pursue another action based on the related claims.  Cal. Civ. Proc. §426.30.  In applying the rule, California courts apply a "logical relationship" test similar to that of federal courts applying Fed. R. Civ. P. 13(a).

Because this court lacks subject matter jurisdiction, COTR's motion must be granted regardless of whether NHA's claims belong in the COTR case.  Nevertheless, COTR has demonstrated that under California's logical relationship test, NHA's claims arise from the same transaction or occurrence as the claims in COTR's complaint.  See Align Technology, Inc. v. Bao Tran, 179 Cal. App. 4th 949, 962 (Cal. App. 6 Dist. 2009) (indicating that under California law, claims arising from the same contract should be deemed to arise from the same transaction or occurrence for purposes of the logical relationship test).

NHA argues that even if its claims are compulsory under the logical relationship test, it is not precluded from proceeding here because it has not yet filed an answer in the COTR case.  Like Fed. R. Civ. P. 13(a), Cal. Civ. Proc. §426.30 states that the principal part of the compulsory counterclaim rule does not apply if "[t]he person who failed to plead the related cause of action did not file an answer to the complaint against him."  Cal. Civ. Proc. §426.30(b)(2).[5]

---

[4] California has abolished use of the term "counterclaims", and refers to all former counterclaims as cross-claims.  Cal. Civ. Proc. Code § 426.10(c).  This order uses the term counterclaims even when referring to state court procedure.

[5] For example, in Four Star Electric, Inc. v. F & H Construction, 7 Cal. App. 4th 1375, 1383 (Cal. App. 3 Dist. 1992), F & H hired Four Star as a subcontractor.  Four Star failed to pay three suppliers, who filed suit against Four Star and F & H.  F & H cross-complained against Four Star for indemnification.  Four Star didn't defend itself and F & H won default judgment in each case.  In the later suit by Four Star, the court found that its complaint was not barred because Four Star never filed an answer to F & H's claims against it.

However, this case presents an unusual procedural posture: the COTR case was filed first, but has progressed more slowly than the instant case.[6] In most cases, of course, the first-filed case has progressed significantly by the time a party in the second-filed case makes the compulsory counterclaim argument. Here, at the time of the most recent hearing in this case, the COTR case had not proceeded to a point where an answer was needed in state court. By the literal terms of §426.30, NHA's counterclaims would not become compulsory unless and until an answer is filed in state court.

Despite NHA's argument,[7] this procedural posture could create a danger for NHA—this court could refuse to apply §426.30 because no answer has been filed. However, because the claims meet the logical relationship test, if an answer is filed in the COTR case it could be determined that NHA is thereafter precluded from proceeding in this court.

For this reason, even if this court had subject matter jurisdiction, it would hesitate to deny the motion to dismiss and see NHA risk losing the opportunity to pursue its claims in either court.

**III. CONCLUSION**

NHA has not shown that there is a substantial, disputed issue of federal law that would confer subject matter jurisdiction on this court. Likewise, it has not shown that the existence of a federal reversionary interest in NHA's property is sufficient to provide subject matter jurisdiction. Even if subject matter jurisdiction existed, a sensible application of Cal. Civ. Proc. §426.30 would lead the court to hold that NHA's claims should be brought in state court as compulsory counterclaims.

---

[6] The COTR case was filed in state court on June 29, 2011, about two months before this case. That case was removed to this court on August 10, 2011. While it was remanded to state court on September 23, 2011, an administrative error prevented the state court judge from receiving the remand order for several weeks after the remand order, further delaying the case's progress.

[7] NHA's argument is based on the federal rule, which is comparable to the state rule in this context.

1    For these reasons, the motion to dismiss is GRANTED, and NHA's motion for a
2 preliminary injunction is DENIED as moot.
3    **IT IS SO ORDERED.**
4 DATED: December 19, 2011

_____
Jeffrey T. Miller
United States District Court Judge